# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| KATHY S. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 4:07-cv-0103-SEB-WGH |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## Entry Discussing Complaint for Judicial Review

Kathy S. Smith ("Smith") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

## I. Background

Smith applied for DIB on June 22, 2004, alleging an onset date of January 1, 2002. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on June 5, 2006. Smith was present, accompanied by her attorney. Medical and other records were introduced into evidence. Smith and a vocational expert testified. The ALJ denied Smith's application on October 27, 2006. On June 28, 2007, the Appeals Council denied Smith's request for review of the ALJ's decision, making the ALJ's decision final. *See Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Smith met the insured status requirements of the Act through June 30, 2007; (2) Smith had not engaged in any substantial gainful activity since January 1, 2002, the alleged onset date; (3) Smith had the following severe impairments: myalgia/fibromyalgia, degenerative disc disease of the cervical and lumbar spine, major depression, post traumatic stress disorder, and episodic alcohol abuse; (4) Smith did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;  (5) Smith had the residual functional capacity ("RFC") to perform low stress, relatively simple tasks at the light exertional level affording the option to sit every 30 to 45 minutes if necessary. (Light work involves lifting no more than 20 pounds at a time with frequenty lifting or carrying of objects weighing up to 10 pounds, and even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls.); (6) Smith was capable of performing past relevant work as a cigarette machine operator as it was actually performed, and this work did not require the performance of work-related activities precluded by her RFC; and (7) Smith could also perform a significant range of light work. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Smith had not been under a "disability" as defined in the Act from January 1, 2002, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or  combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the

burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Smith had "severe" impairments consisting of myalgia/fibromyalgia, degenerative disc disease of the cervical and lumbar spine, major depression, post traumatic stress disorder, and episodic alcohol abuse and that she could perform her past relevant work and other jobs in the economy. Smith argues that the ALJ's decision is not supported by substantial evidence.

Smith first contends that the ALJ did not give proper weight to the opinion of treating physician Dr. Fineman. She contends that the ALJ should have given significant weight to Dr. Fineman's opinion because Dr. Fineman treated Smith from March 2001 through March 2006 and therefore was in a good position to know Smith's abilities and limitations. On August 31, 2004, Dr. Fineman opined that Smith could sit two hours in an 8 hour day and could not stand or walk at all, she could lift and carry up to 20 pounds occasionally, she could use her hands for simple grasping but not for pushing, pulling and fine manipulation, she could occasionally bend, squat, and reach above shoulder level, but never crawl or climb. (R. at 17, 157). Dr. Fineman also totally restricted Smith from activities involving unprotected heights and exposure to marked changes in temperature and humidity, and dust, fumes, and gases. *Id.* Dr. Fineman remarked that Smith had disc disease and chronic pain. *Id.*

The ALJ discussed the records of treating internist Dr. Fineman. (R. at 16-17). The ALJ noted that the records from February 2004 through August 2004 showed diagnoses of back pain, jaw pain, depression, anxiety, hypothyroidism and gastroesophageal reflux disease but reflected few if any clinical findings. (R. at 16). Lab analysis in February 2004 showed elevated liver enzymes but a liver biopsy showed only mild viral hepatitis. *Id.* A chest x-ray of July 28, 2004, was normal. *Id.* The ALJ reviewed the August 2004 opinion, noting that although Dr. Fineman based his limitations on disc disease and chronic pain, Dr. Fineman had not prescribed any pain medication at that time. (R. at 17). The ALJ noted that in February 2005, Dr. Fineman treated Smith for an upper respiratory infection, that in April 2005, she called in to request something for lower and middle back pain and was given Flexiril, that lab analysis in May 2005 was normal, and that samples of Synthroid were given on July 11, 2005. *Id.* In October 2005, Smith called Dr. Fineman's office asking for something to help her sleep, identifying a new job as the source of the difficulty. *Id.* Ambien was prescribed, and Effexor and Zoloft were prescribed the following month. *Id.* Liver function studies were normal. *Id.* In March 2006, Dr. Fineman's records show that Clarinex and Biaxin were called in for complaints of temperature, body aches, and runny nose. (R. at 18).

The ALJ rejected Dr. Fineman's opinion because the limitations Dr. Fineman assessed were inconsistent with the level of treatment provided, the lack of prescribed pain medications, and Smith's account of her daily activities. (R. at 21). The ALJ determined that Dr. Fineman's opinion was not supported by other objective or treatment evidence and therefore it was not accorded any great weight. *Id.* The ALJ noted that Smith's overall treatment had been conservative and sometimes sporadic. (R. at 20). She had not required hospitalization for any condition. *Id.* There had been little specialized treatment for fibromyalgia and the record contained few complaints of fatigue. *Id.* Another physician assessed mild general arthritis and myalgia, and there were no documented symptoms of systemic connective tissue disease. *Id.* Range of motion studies had shown essentially full mobility in all joints with the exception of mild diminishment in lumbar movement. *Id.* Updated x-rays showed no significant changes from earlier studies. *Id.* Smith had not been referred for specialized orthopedic or neurosurgical evaluation. *Id.* Examinations did not demonstrate findings consistent with radiculopathy, neurological abnormality or nerve root compression. *Id.* Station and gait were normal and unassisted. *Id.* The ALJ's determination that Dr. Fineman's opinion was not well-supported by the record, by the level of treatment provided, and by Smith's daily activities is supported by substantial evidence.

A treating physician's opinion is not automatically entitled to controlling weight. The Seventh Circuit Court of Appeals has held that if well-supported evidence is introduced which contradicts the opinion of a treating physician, even if it is that of non-treating, non-examining physicians, then the treating physician evidence is not controlling and it is just one more piece of evidence to consider. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). In *Hofslien* the court recognized that while a treating physician has the advantage over non-examining physicians due to having spent time with the claimant, "the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits) will often bend over backwards to assist a patient in obtaining benefits." *Id.* (internal citations omitted). *See also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). In addition, a treating physician's statement that a claimant is disabled or cannot work is not conclusive. *See Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'"). The reasons given by the ALJ in evaluating the opinion of Dr. Fineman are valid bases on which to weigh medical source opinions. *See* 20 C.F.R. § 404.1527(e); Social Security Ruling 96-2p; 20 C.F.R. § 404.1527(d). Under these circumstances, the weight given to the opinion of treating physician Dr. Fineman was not legally erroneous.

Next, Smith argues that the ALJ improperly dismissed evidence of her severe emotional problems. She notes that in August 2004, a consultive psychologist Dr. Freudenberger assessed a Global Assessment of Functioning ("GAF") score of 50-55 and that in 2006 a staff psychiatrist at Life Spring mental health center assessed a GAF score of 50, which indicates serious symptoms. She argues that the ALJ's RFC does not take into account such a severe level of impairment.

The ALJ discussed the mental health reports. (R. at 16-18, 20). The ALJ acknowledged the GAF scores as low as 50, but noted that during one assessment alcohol

abuse was a relevant factor, and the more recent GAF score was assessed during a period when Smith was worrying about contracting HIV.  (R. at 20-21). The ALJ noted that Smith had been assessed with depressive disorder and possible panic disorder, but the recent records and complaints did not support the panic disorder. (R. at 21). The ALJ stated that Smith was able to perform daily living activities despite alleged pain and depressive complaints, and examinations documented that concentration was not a problem. *Id.* The ALJ noted that there was no medical opinion as to mental related work restrictions. *Id.* Although Smith's mental status significantly worsened around April 2006, the ALJ reasoned that it appeared to be situational and was not expected to stay as severe for a 12 month period. *Id.* The ALJ noted that the record showed improvement with medication, which Smith acknowledged at the hearing. (R. at 21).

The ALJ did not ignore the mental health evidence. Although another fact-finder could weigh this evidence and come to a different ultimate conclusion, the court must decline any invitation to reweigh the evidence because the court "cannot engage in [its] own analysis of whether [a claimant] is severely impaired as defined by the SSA regulations." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir.  2004); *see also Rice v. Barnhart*, 384 F.3d at 369 ("we will not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner.") (internal quotation omitted); *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). The ALJ accommodated Smith's mental health condition in his RFC assessment by limiting Smith to performing low stress, relatively simple tasks. (R. at 19). The ALJ's discussion of the mental health evidence was adequate and the court is able to trace the path of the ALJ's reasoning in this regard. The ALJ's conclusions with respect to Smith's mental health impairment are supported by substantial evidence.

Smith also argues that the ALJ erred in assessing her credibility. Smith contends that the ALJ's assessment lacked specificity, that it failed to build a logical bridge based on all of the evidence, and that the credibility determination is not entitled to blind deference. In determining Smith's credibility, the ALJ recited the appropriate regulations. (R. at 19, citing SSR 96-7p, SSR96-4p, and 20 C.F.R. § 404.1529). The ALJ reviewed Smith's testimony concerning her work history, symptoms, daily activities, and treatment history. (R. at 20-21). He concluded that Smith's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (R. at 20). The ALJ noted that the DDS medical and psychological consultants opined that Smith did not have any severe impairment. *Id.* Consulting examining physician Dr. Ehsan assessed mild general arthritis and myalgia. *Id.* The ALJ noted that although multiple impairments were noted at one place or another in the record, there was little objective support. *Id.* The record showed few complaints of fatigue. *Id.* Smith reported debilitating pain, but the ALJ noted that no medication had been prescribed or taken for pain. *Id.* The ALJ stated that Smith's activities of daily living indicated that despite her allegations of pain and depression she was able to perform a wide range of household tasks without difficulty, such as cooking, cleaning, laundry, and grocery shopping. (R. at 21). She drove regularly, listened to music and watched television throughout the day, and got along well with friends and others. *Id.* The ALJ also reasoned that Smith's testimony regarding her work activity was inconsistent with

her contention that she was totally debilitated. Smith did not initially stop working due to an impairment, but because she was laid off. *Id.* A report from her former employer in 2004 suggested that Smith left that job because she did not like the duties or hours involved. *Id.* The ALJ further noted that Smith testified that she was able to perform her desk job work in January 2006, and that she did not really understand why she was fired. (R. at 20, 303). The ALJ considered Smith's testimony that her medications caused dryness in her mouth, but noted that no such complaint had been made to any medical source. (R. at 20).

A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). "[A]n ALJ's credibility assessment will stand as long as [there is] some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (internal quotation omitted). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citations omitted). The ALJ provided specific reasons for his finding that Smith was not totally credible and those reasons are supported by the record. In this case, the ALJ discussed in detail the appropriate factors in weighing Smith's credibility. The ALJ credited Smith's reports of limitations to some extent in assessing her RFC. The ALJ's discussion relating to Smith's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (quotation omitted). The ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). An "ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). That is the case here. Accordingly, because substantial evidence supports the ALJ's evaluation of Smith's impairments, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Smith's application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. For the reasons discussed in this Entry, Smith is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _08/22/2008_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana